Roswell Hunt and Jonathan Hunt, *Adm'rs of Arad Hunt,* deceased, *vs.* Joseph Tyler and William R. Shafter.—*IN CHANCERY.*

*Windham, February. 1827.*

One having mortgaged *White acre* to secure the payment of notes due on a day certain, and also *Black acre*, conditioned for the payment of the same notes, or, in case of failure, for the *surrender* of *white acre*, without suit or trouble, the notes not being paid, *Held*, that the surrender ought to have been made in a reasonable time, or when requested by the mortgagee. And no request appearing, *it was decreed*, that the orator might redeem *Black acre*, by paying the costs, and the *interest* on the notes from the time they became payable, and by a surrender of *white acre*; but, that in case of failure, both messuages be holden for the payment of the *whole debt* and costs.

JOSEPH TYLER being indebted to *Arad Hunt*, in the sum of \$3328 for borrowed money, on the 25th day of June, 1823, executed to him two notes of hand therefor, payable in one year, with interest payable annually. At the same time, he conveyed to said *Arad*, by a deed of bargain and sale, a tract of land in *Townshend*, called the home farm, and took from said *Arad* a writing, in which the latter agreed to re-convey to him the said home-farm, on the payment of the notes, according to their tenor and effect. The said *Joseph* also simultaneously executed to the said *Arad* a deed of another tract of land, in Townshend, called the *Holbrook lot*, the latter deed to be void, on condition that the said Joseph well and truly pay the said notes, or else, in case of failure, that he should *surrender* to the said *Arad*, his heirs, &c. the said *home farm*, without any suit or trouble.

The notes not being paid when they fell due, the said *Joseph* gave notice to the said *Arad*, that he should surrender, and was ever ready to surrender the home farm. About ten months after the notes fell due, the said *Arad* being then dead, and the said *Joseph* having quit the home farm, the orators took possession thereof, and retain the same. *Afterwards*, the said *Joseph*, by deed, conveyed the said *Holbrook lot* to *Shafter*, the other defendant.

It did not appear that the said Joseph was ever specially requested to surrender the said home farm, either by the said Arad or the orators.

The orators, avering the non-payment of the notes, and that the home farm had not been surrendered according to the condition of the mortgage deed, prayed that the sum due in equity might be ascertained, and that on the non-payment thereof, &c. the equity of redemption in *both* said parcels of land, be foreclosed, &c.

The cause was set down for hearing, and was argued upon the bill and answers.

The following opinion of the court and substance of a decree, was pronounced by

Hutchinson, Chancellor. This case has been heard upon the bill and answers, a recurrence to which shows the chief point of controversy to be, whether the mortgage deed of the land

*Windham,*
*February,*
*1827.*
‿‿‿‿
Hunt *et al.*
*vs.*
. Tylor *et al.*

called the *Holbrook land,* of course holds that land for the pay-ment of the whole mortgage money, or only for the surrender of the home farm, as it is called. There seems no doubt, but that if the object of the bill were merely to foreclose the equity of redemption of the home farm, the orators would be entitled to a decree of foreclosure; for the writing given by *Hunt* to *Tyler,* converting his title into a mortgage, has never been deliv-ered up to be cancelled, and *Tyler* yet retains the right of re-demption.

The mortgage by *Tyler* to *Hunt,* of the *Holbrook land,* is made a part of the answer, and the condition is as follows : *Provided, nevertheless,* that if I the said *Joseph,* my heirs, executors, admin-istrators or assigns, shall well and truly pay or cause to be paid to the said *Arad Hunt,* his heirs, executors, administrators or assigns, two certain notes of hand, this day given by me to said *Arad Hunt,* one note for $1500, the other for $1828, and the interest annually ; or else, in case of failure, shall surrender to said *Arad,* his heirs or assigns, my home farm, containing two hundred acres, without any suit or trouble, this day conveyed by me to said *Arad,* then this deed to be void, otherwise to be and remain in full force and effect."

There is no time set at which he was to surrender ; hence, it should have been done in a reasonable time, or when requested by the orator. In fact, the very idea of a surrender of posses-sion by *Tyler,* implies that *Hunt* should be there by himself, or agent, to receive possession. The surrender in this case re-quired also the delivering up to be cancelled, the writing which secured his equity of redemption. The conduct of the parties shows that neither of them attached much importance to the exact time of surrender. It does not appear, that ever *Tyler* was requested to surrender ; but it does appear that he gave no-tice to *Hunt* in his life time, and was ever ready, &c. to surren-der, and that he abandoned the home farm, and in ten months after the notes were payable, the orators took possession, and yet retain the same. Under such circumstances, equity will not warrant the court in deciding, that the election to surrender is lost, by such a delay as appears.

But, according to the authorities cited, a court of equity should not extend the time for doing a collateral thing, where the op-posite party is not in fault, unless they can decree that which will compensate the opposite party. It is urged, that this can-not be done, because the value cannot be ascertained in the present case. The bill states no fact of damage, no loss of sale, no diminution of value, after the notes were payable, till the or-ators took possession ; hence, no such damage or loss ought to be inferred. But the orators lost the use and occupation of the farm during that time, and for this they may be compensated, and for this the *Holbrook farm* should be holden as a pledge.

Therefore, to meet all the difficulties in the case, and do as equal justice as possible, the Court decree, that upon the de-fendant's paying to the clerk of this court, for the benefit of the

orators, on or before the first Monday of June next, the taxable cost of this suit, and the interest of the sum that was due upon the notes described in the bill at the time the same became payable, that interest to be cast during the ten months before the orators had possession, and the interest on that sum, from the expiration of said ten months till said first Monday of June, and deliver to said clerk, for him to deliver to the orators, to be cancelled, said writing signed by said *Hunt*, securing to said *Tyler* the equity of redemption, the *Holbrook farm* shall thenceforth be holden by *Shafter*, free from all claim of the orators, and they shall release to him their right to the same.

If there is a failure of said defendants to perform this, then the whole mortgage money (deducting the interest during the time the orators possess the home farm) and the cost shall be paid on or before the second Monday of February, 1828, or the equity of redemption of both farms be foreclosed.

*Jonathan Hunt*, solicitor for the orators.

*Charles Phelps*, for the defendants.